## THE HANSON H. KEYES.

### (District Court, D. Maryland. November 26, 1900.)

1. COLLISION IN FOG—MUTUAL FAULT.

A steamboat and a ferryboat collided in a harbor in a fog so dense that neither vessel could see the other at a greater distance than 20 or 25 feet. Both vessels were moving at a very moderate speed, and fog signals were blown. When the signals appeared to be coming nearer, each stopped her engine, but, because of the density of the fog and the close proximity of the vessels before they saw each other, the collision followed. *Held*, that both vessels were in fault in not reversing their engines, so that each vessel should have been stationary.

2. SAME—DAMAGES.

In case of mutual fault, causing collision, the practice is to equally divide the damage.

Daniel H. Hayne, for libelant.
Robt. H. Smith, for respondent.

MORRIS, District Judge (orally). This is a collision between a steam ferryboat and a steam tug, which depends for its determination almost entirely upon the facts, and the facts are simple. I have been struck with the candor, intelligence, and frankness of the witnesses on both sides. I am not disposed to think that any one of them has intentionally perverted the truth, or has given his testimony with any greater bias than unconsciously affects witnesses in a collision case, testifying with some indistinctness of recollection about an accident which happened about 10 months ago. I think it is very evident that both vessels were being navigated with great care, and that the persons in charge of them were alive to the great caution necessary to navigate at all in such a dense fog as there was on the day of the collision. It becomes my duty, in passing upon the case, to determine what degree of caution the two vessels were bound to observe in undertaking to navigate in the harbor in a fog so dense that neither vessel could see the other at a greater distance than 20 or 25 feet; that is to say, within such close proximity that, after they sighted each other, nothing could be reasonably done to prevent the collision. It seems obvious that when two vessels, if they have any headway at all, have got within 20 or 25 feet of each other, it is too late then to do anything which is going to prevent their coming together with such headway as they had when they sighted each other. Therefore, anything which is to be done by either of them to prevent collision has to be done before they can see each other, and when each other's presence is only known by fog signals. In this case fog signals were blown upon each vessel. There is no ground for the contention that either failed to comply with the law in that respect. Both vessels were moving at a very moderate speed. Each heard the other's signals nearly directly ahead. When the signals appeared to be coming nearer, each stopped her engines, and that came very near being sufficient to prevent the collision; but, because of the

density of the fog and of the very close proximity of the vessels before they saw each other, it was unsuccessful. Under such circumstances, it seems to me that the only precaution which will be effective is that, when vessels in such a fog as that are approaching each other, as indicated by the signals, they should come to a standstill; and that can only be done by reversing the engines. I am quite satisfied that both of these vessels had some headway at the time of collision. They had been going at a moderate speed, and when they stopped their engines that gradually allowed the speed to die down. But it requires more than that. Their engines should have been reversed. The ferryboat, as I understand the testimony, stopped first. She stopped her engines earlier than the tug; but the ferryboat was a heavier vessel, and had more momentum, and her headway ran out more slowly than that of this small tugboat. But I think that when they met, so far as I can judge from the testimony, both of them had some headway, and the conclusion I have come to is that both were in fault. The density of the fog, and the fact that the space in the harbor was small, and that they heard each other's signals quite close at hand, required that extreme caution should be observed. Due caution required that when they found that they were approaching near, and at any moment were liable to loom up out of the fog and see each other, at that time they should have reversed their engines, so that each vessel would have been stationary in the water. I cannot accept the suggestion urged upon the court that the collision between these two vessels was the result of inevitable accident. When steam vessels are navigating in a dense fog, under circumstances known to be of great danger, when there was no intervening cause and no vis major, and when by coming to a standstill by a timely reversing of their engines they could have avoided the collision, it is not a case of inevitable accident.

It is suggested that there is a difference between English and American decisions on the subject of what should be done; that the English cases require that a steam vessel shall stop and reverse as soon as it receives signals directly ahead, and the American rule is more lax. That depends upon the circumstances. Precautions must be adopted to effect a result,—to prevent a collision. In a fog as dense as this one, and with vessels as near to each other as they necessarily are in navigating the harbor of the port of Baltimore, it seems to me that the court should enforce the rule of navigation that, when the risk is so great and imminent, steam vessels should not only stop, but reverse. I find the rule very fairly stated in Spencer, Marine Coll. p. 136, as follows:

"It may be stated, as a general rule, that it is necessary for a steamer to stop and reverse in a dense fog, when a whistle or fog signal is heard approaching on either bow, and apparently in the vicinity, unless the fog signals of the approaching ship unequivocally indicate that it is headed so as to pass clear, without involving risk of collision. Where two steamships are invisible to each other in a dense fog, and find themselves drawing near together, ordinary prudence requires them to stop or reverse, without waiting until they become visible to each other, unless there are attending circumstances

of unusual character, which make it more dangerous to stop or reverse than to advance."

See The North Star (D. C.) 43 Fed. 807; The Midland (D. C.) 48 Fed. 331.

If it was the practice of courts in admiralty to discriminate and apportion damages between two vessels in proportion to each vessel's degree of fault, the court would consider which of these two vessels was the more in fault; but as this is not the rule, and the rule obtains of equal division of damages in case of mutual fault, I shall not undertake to consider that question at all. The decree is to divide the damages.